## No. 11,461.

BANK OF STEAMBOAT SPRINGS *v.* ROUTT COUNTY BANK.

Decided January 3, 1927.

Action to compel transfer of corporate stock. Judgment for defendant.

## *Reversed.*

### *On Application for Supersedeas.*

1. CORPORATIONS—*Stock—Transfer.* An unregistered transfer of stock is valid as between the transferor and transferee or pledgor and pledgee.

2.      *Stock—Transfer.* A transfer or pledge of stock is invalid only as to attaching or execution creditors of the transferor, if registry is not made on the corporate books within 60 days after the transfer or pledge.

3. SALES—*Corporate Stock—Collateral Agreement.* Where c o r p o r a t e stock was pledged as collateral to a promissory note with the agreement that payee of assigns might purchase the stock if sold at a broker's board or public sale, it is held that the payee obtained no title through a purchase at private sale.

*Error to the District Court of Routt County, Hon. Charles E. Herrick, Judge.*

Messrs. GOODING & MONSON, for plaintiff in error.

Messrs. BARDWELL, McCOMB & STRONG, Mr. H. C. SKILLMAN, for defendant in error.

*En banc.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

THE plaintiff in error brought this suit against the defendant in error, the Routt County Bank, a corporation, and against the Steamboat Springs Company, a corporation, Iona B. Stewart, and Robert V. Blum, as sheriff of Boulder county, Colorado, to require the Springs Company to record on its books a transfer of 53 1/3 shares of the capital stock of the company from Oliver I. Cheney to Iona B. Stewart, in order that the stock should be held and stand on the books in the name of said Stewart as owner, and that the defendant sheriff be required and directed to advertise the stock for sale and sell the same according to law, to satisfy a judgment held by plaintiff against defendant Stewart. The defendants, the Steamboat Springs Company, Iona B. Stewart and Robert V. Blum, made default. Trial to the court, findings and judgment for defendant bank, and plaintiff prosecutes this writ of error. Supersedeas applied for.

The case was tried upon an agreed statement of facts and some additional testimony. The facts agreed upon, which we deem material, are as follows: On November 19, 1924, the court rendered a judgment in action then pending wherein the plaintiff in this case was plaintiff and the defendant herein, Stewart, was defendant, in favor of the plaintiff, and against Stewart, for the sum of $1,465.83, and costs, which judgment is valid and unpaid; that on May 15, 1925, the defendant sheriff, under an alias execution issued on the judgment, attempted to levy on 53 1/3 shares of stock in the Steamboat Springs Company, by filing with the secretary of the company the certificate of levy set out in the complaint; that the execution was still in the hands of the sheriff. On November 14, 1919, Oliver I. Cheney (or Ollie I., being one and the same) died intestate, owning at the time the 53 1/3 shares of stock, in controversy here, evidenced by certificate No. 212, and standing in his name on the books of the Springs Company, and still so standing, and leav-

ing as his sole and only heir at law the defendant, Iona
B. Stewart; that she thus became the owner of the 53 1/3
shares of stock and continued to be the owner thereof
unless her ownership was divested by the pledge to the
defendant bank, and the foreclosure thereof, if any, on
November 19, 1924; that no minute or entry has ever
been made, showing the ownership of defendant Stewart,
or the devolution of the stock to her by virtue of her
heirship; that on November 17, 1924, the defendant bank
directed a letter to the defendant Springs Company,
which was received on November 19, and which merely
informed the Springs Company that the stock had been
pledged to the defendant as collateral, and that the debt,
which it was given to secure, had not been paid. Upon
receipt of the letter, the secretary of the company made
the following notation on the stub of the stock book for
certificate No. 212: "Nov. 19, 1924, this certificate
pledged to the Routt County Bank, Oak Creek, Colo-
rado." On April 24, 1924, defendant Stewart executed
and delivered to defendant bank her promissory note
for $500, due 180 days after date, and to secure the same
endorsed in blank and delivered, by way of collateral, the
stock certificate No. 212. The pledge was not entered on
the books of the Steamboat Springs Company, and no
memorandum was made on its books showing to whom or
for what amount the stock had been pledged, and de-
fendant bank did not, at any time, notify or advise de-
fendant Springs Company thereof, except by the letter
of November 17. The note has never been paid.

On January 8, 1925, defendant bank mailed the stock
certificate, endorsed in blank by Stewart, to the Springs
Company, with a certified copy of the decree of final
settlement and determination of heirship in the Oliver I.
Cheney estate, asking that it be transferred in the name
of the Routt County Bank, as the stock had been held by
it as security for a loan made to Stewart on April 24,
1924, stating that as the loan had not been paid the bank

purchased the stock at private sale. This the secretary refused to do. The sheriff filed the certificate of levy, under the alias execution, and on June 2, 1925, this action was instituted.

In addition to the foregoing agreed statement of facts, Allen Cliff, president of defendant bank, testified, among other things, that the bank sold the stock at private sale at the bank on November 19; that the cashier of the bank offered the stock for sale and said that it was for sale under the terms of the note; that he, the witness individually, made a bid of $50; that in bidding in the stock, he was acting not for himself but for the bank; that the bank's money paid for the stock; that the bank held the note and owned it; that the endorsement on the back of the certificate for the transfer of the stock was in blank and that no transfer of the stock was ever discussed at the bank. The amount of the bid was credited to Stewart on her note.

In the collateral agreement appears, among others, this clause: "And the undersigned hereby give the said payee and assigns authority to sell the said property * * * at any public or private sale, without advertising the same or demanding payment or giving notice, with the right to said payee and assigns themselves to be the purchasers, when the sale is made at any broker's board or public sale."

The court found and adjudged that defendant bank was the legal and equitable owner of the stock in question and was entitled to have the Springs Company and its officers required and directed to make proper entries upon the books and records of the company to vest in the defendant a wholly legal and equitable title to the said shares of stock.

The plaintiff's position is that it has an execution, as well as an equitable, lien upon the shares of stock in controversy, and that defendant bank is without any interest in or title to the same as against the plaintiff,

for the reason that no memorandum was made on the books of the Springs Company within 60 days from the date of the pledge, or at all, showing to whom, and for what amount, the stock had been pledged.

It is clear that the stock in question has never been transferred on the books of the Springs Company to either Iona B. Stewart, or to the defendant bank, and no request therefor was ever made by the bank as pledgee.

By reason of the sale to the bank, on November 19, the defendant bank claims that it had 60 days thereafter in which to request of the Springs Company a transfer of the stock on its books.

The execution lien of the plaintiff did not attach prior to April 28, 1925, the date when the execution came into the hands of the sheriff. The plaintiff claims that as the stock has not at any time stood in the name of Stewart, the execution defendant, on the books of the Springs Company, it could not resort to the statutory procedure for subjecting corporate stock to the payment of the judgment, by means of an execution, but must proceed as it has in the present action.

We think it is well settled in this jurisdiction that an unregistered transfer of stock is valid as between the transferor and the transferee, and the same is true as between the pledgor and pledgee. The transfer is invalid only as to attaching or execution creditors of the transferor, if registry of the transfer or pledge be not entered upon the books of the company within 60 days after the transfer or pledge has been made. The question here presented is whether, in the circumstances of this case, the plaintiff is entitled to have the stock sold under its execution to satisfy the judgment against Stewart, or whether the defendant bank is entitled to the stock through its purchase, and the request made January 8, 1925, for its transfer on the books of the company.

The sale to the defendant bank, on November 19, was contrary to the terms of the collateral agreement, and

no title or ownership vested in the defendant by reason thereof. The bank could only become the purchaser, provided the sale was made at any broker's board or public sale, and by such sale only could the defendant acquire title to the stock.

It is no answer to say that if the sale to defendant bank should be held invalid, plaintiff's right would be no greater than the rights of Stewart, and that the stock would still have remained in the hands of defendant, as pledgee, for in the meantime, and before the institution of this suit, the execution lien of plaintiff had attached. It follows, therefore, that plaintiff was entitled to the relief prayed.

The supersedeas is denied, and judgment reversed with instructions to the trial court to render judgment for plaintiff.